**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| WILLIAM BARRON, III | : | |
| | : | CASE NO. 23-11639-DJB |
| Debtor | : | |
| _____ | : | |
| | : | |
| WILLIAM BARRON, III | : | |
| | : | |
| Plaintiff | : | ADV. NO. |
| v. | : | |
| | : | |
| WALLACE CONSULTING AND | : | |
| INVESTMENT CORPORATION | : | |
| | : | |
| Defendant | : | |
| _____ | : | |

**COMPLAINT TO DETERMINE THE VALIDITY, PRIORITY, OR EXTENT OF ANY
LIEN OF WALLACE CONSULTING AND INVESTMENT CORPORATION AND FOR
DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PROTECTION
ACT, TRUTH IN LENDING ACT, PENNSYLVANIA UNFAIR TRADE PRACTICES
ACT AND CONSUMER PROTECTION LAW, PENNSYLVANIA FAIR CREDIT
EXTENSION UNIFORMITY ACT AND PENNSYLVANIA LOAN INTEREST AND
PROTECTION LAW**

**I.  Introduction**

1. This is a Complaint pursuant to 11 U.S.C. § 506(a) and Federal Rules of Bankruptcy

Procedure 3012 and 7001(2), (9) by debtor William Barron ("Mr. Barron") to determine

the extent and validity of Defendant Wallace Consulting and Investment Corporation's

("Wallace") claimed interest in in Mr. Barron's home located at 1202 S. Melville Street,

Philadelphia, PA 19143 ("Property"). In this Complaint, Mr. Barron also seeks damages

against Wallace for violations of the Fair Debt Collection Protection Act ("FDCPA"),

Truth in Lending Act ("TILA"), Pennsylvania Unfair Trade Practices and Consumer

Protection Law ("CPL"), Pennsylvania Fair Credit Extension Uniformity Act

("FCEUA"), and Pennsylvania Loan Interest and Protection Law ("Act 6").

## II. Jurisdiction

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

3. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B), (C) and (K).

4. Debtor consents to final judgment by the bankruptcy court.

## III. Parties

5. Mr. Barron in an individual residing at 1202 S. Melville Street, Philadelphia, PA 19143 (the "Property.")

6. Upon information and belief, Wallace is a corporation existing under the laws of California with a principal place of business located at 1020 Pacific Coast Highway, Apt A, Huntington Beach, CA 92648.

## IV. Facts

7. Mr. Barron filed the above-captioned bankruptcy on June 2, 2023.

8. Mr. Barron is the resident and record owner of the Property.

9. Mr. Barron has lived in the home since 1990.

10. On November 4, 2005, American Express Bank FSB recorded a mortgage on the Property in the Office of the Recorder of Philadelphia County purportedly executed by Mr. Barron and Gary Jefferies on October 4, 2005, at document number 51307366.

11. On April 5, 2007, PNC Bank, N.A. ("PNC") recorded a mortgage ("PNC Mortgage") on the Property in the Office of the Recorder of Philadelphia County purportedly executed by Mr. Barron on March 21, 2007, at document number 51665753.

12. The PNC Mortgage secured repayment of a home equity loan, evidenced by a Note

("Note,") with a principal amount of $18,350.00. A copy of the Note is attached as Exhibit "A" and incorporated by reference herein.

13. The Note had an adjustable interest rate that started at 8.993%, for a monthly payment of $232.73, and a term of 120 months.

14. In 2011, Mr. Barron fell behind on the PNC Mortgage payments.

15. PNC sent Mr. Barron a letter dated June 20, 2011 ("PNC Letter,") that stated that if Mr. Barron paid $3,991.73 prior to June 30, 2011, "[PNC] will not pursue the collection of the remaining Account Balance and will report the Account as 'settled for less than the full balance' to the three major credit agencies."

16. Mr. Barron paid $3,991.73 prior to June 30, 2011.

17. After paying the $3,991.73, Mr. Barron no longer received mortgage statements from PNC.

18. On November 13, 2018, PNC recorded an Assignment of the Mortgage ("Assignment I") in the Office of the Recorder of Philadelphia County at document number 53441519, purporting to assign it to U.S. Mortgage Resolution, LLC ("U.S. Mortgage.")

19. On December 23, 2019, U.S. Mortgage recorded an Assignment of the Mortgage ("Assignment II") in the Office of the Recorder of Philadelphia County at document number 53609499, purporting to assign it to Trinity Financial Services, LLC ("Trinity.")

20. On January 2, 2020, U.S. Mortgage recorded an Assignment of the Mortgage ("Assignment III") in the Office of the Recorder of Philadelphia County at document number 53613379, purporting to assign it to Trinity.

21. On February 6, 2020, Trinity filed a Complaint in mortgage foreclosure to foreclose the PNC Mortgage, docketed at Trinity Financial Services, LLC v. Barron, C.C.P. Phila March

Term 2020 No. 727. Trinity obtained a Default Judgment in favor of Trinity on March 15, 2022 (the "Trinity Judgment").

22. On November 22, 2022, Trinity recorded an Assignment of the Mortgage ("Assignment IV") in the Office of the Recorder of Philadelphia County at document number 54123488, purporting to assign it to 30 Sun Valley Drive, LLC.

23. On November 30, 2022, Trinity filed a Praecipe to Assign Judgment to 30 Sun Valley Dr, LLC in the foreclosure action.

24. On June 2, 2023 date, Mr. Barron filed a Petition under Chapter 13 of the bankruptcy code, docketed at E.D. Pa. Bnky. No. 23-11639.

25. On June 29, 2023, 30 Sun Valley Drive, LLC recorded an Assignment of the Mortgage ("Assignment V") in the Office of the Recorder of Philadelphia County at document number 54196395, purporting to assign it to Trinity.

26. On July 11, 2023, Trinity filed Proof of Claim No. 3 in Mr. Barron's bankruptcy case.

27. Trinity alleges in Claim No. 3 that it holds a secured claim owed to Trinity based on a mortgage.

28. On January 22, 2024, Trinity recorded an Assignment of Mortgage ("Assignment VI") in the Office of the Recorder of Philadelphia County at document number 5462538, purporting to assign it to Wallace Consulting & Investment ("Wallace").

29. On January 3, 2024, Claim No. 3 was transferred to Wallace.

## OBJECTIONS TO PROOF OF CLAIM NO. 3

### Objection I – Federal Rule of Bankruptcy Procedure 3001

30. Mr. Barron incorporates all paragraphs above by reference as if set forth herein.

31. Federal Rule of Bankruptcy Procedure 3001 requires that when "a claim or an interest in the debtor's property securing the claim is based on a writing, the creditor must file a copy with the proof of claim.  Fed. R. Bankr. P. 3001(c)(1).

32. Claim No. 3 is based on a mortgage secured by Mr. Barron's Property.

33. Claim No. 3 does not include the all of the assignments, or sufficient allonges, or chain of title information as exhibits.

34. In addition, Rule 3001 requires that a creditor must file with the proof of claim an itemized statement of the principal amount and any interest, fees, expenses or other charged incurred before the petition was filed. Fed. R. Bankr. P. 3001(c)(2)(A).

35. Claim No. 3 claims interest owed but does not include an itemized statement of any interest or additional charges.

36. Further, Rule 3001 provides that if a creditor claims a security interest in the debtor's property, the proof of claim must include evidence that the security interest has been perfected.

37. Again, Claim No. 3 does not include any information about the chain of title.

38. Claim No. 3 does not comply with Rule 3001.

39. As a result, Claim No. 3 is not entitled to be allowed as "*prima facie* evidence of validity and amount of the claim" pursuant to Rule 3001(f).

40. The amounts claimed in Claim No. 3 are completely inaccurate based on the satisfaction and accord of the Note that was promised by the PNC Letter.

41. Mr. Barron paid the PNC Mortgage loan off in 2011, in accordance with the offer made by PNC.

42. However, this information does not appear in Claim No. 3 because Claim No. 3 fails to include any life of loan transaction history as required by Rule 3001(c).

43. Alternatively, pursuant to Rule 3001(c)(2)(D)(i)-(ii), Mr. Barron requests that Wallace be precluded from presenting the omitted information, in any form, as evidence at the hearing on this Objection and the Claim should be recalculated and reduced based on the original Note.

44. Mr. Barron further requests that this Court award other appropriate relief, including reasonable expenses and attorney's fees caused by Wallace's failure.

WHEREFORE, Mr. Barron respectfully prays this Court enter an order that:

    a.  Sustains Debtor's Objection to Claim No. 3;

    b.  Disallows and reduces to $0.00 Claim No. 3 of Wallace;

    c.  Provides any and all other relief this Court deems fair and proper.

### Objection II – Lack of Standing

45. Mr. Barron incorporates all paragraphs above by reference as if set forth herein.

46. Once a proof of claim loses the presumption of validity due to a failure to comply with the documentation requirements of Bankruptcy Rule 3001, the claimant bears the burden of proof to show it is the holder of the claim or otherwise has standing to enforce the claim. In re Sacko, 394 B.R. 90, 98 (Bankr. E.D. Pa. 2008).

47. Wallace is not the real party in interest entitled to enforce the Mortgage or submit Claim No. 3.

48. Wallace does not have standing to enforce the Mortgage or submit Claim No. 3.

49. On information and belief, Wallace is not the holder of the Note.

50. On information and belief, Wallace is not a nonholder of the Note with a right to enforce the Note.

51. On information and belief, Wallace has no legally enforceable interest in the Mortgage or Note.

52. Wallace as the Claimant bears the burden of proving that it is a party in interest.

53. Wallace cannot prove ownership of the Mortgage or Note by establishing a chain of title.

54. Claim No. 3 does not present sufficient evidence to permit a finding that Wallace is the holder of the Mortgage.

WHEREFORE, Mr. Barron respectfully prays this Court enter an order that:

    a.  Sustains Debtor's Objection to Claim No. 3;

    b.  Disallows and reduces Claim No. 3 to $0.00.;

    c.  Provides for any and all other relief this Court deems fair and proper.

### Objection III – Accord and Satisfaction

55. Mr. Barron incorporates all paragraphs above by reference as if set forth herein.

56. Mr. Barron satisfied the Mortgage and Note when:

    a.  PNC offered to resolve the Mortgage and Note for $3,991.73 by June 30, 2011,

    b.  Mr. Barron paid $3,991.73 to PNC before June 30, 2011, and

    c.  PNC accepted the payment of $3,991.73.

57. PNC and Mr. Barron's accord and satisfaction of the Mortgage and Note discharged Mr. Barron's obligation.

WHEREFORE, Mr. Barron respectfully prays this Court enter and order that:

    a.  Sustains Debtor's Objection to Claim No. 3;

b.  Disallows and reduces Claim No. 3 to $0.00;

c.  Provides for any and all other relief this Court deems fair and proper.

## AFFIRMATIVE CLAIMS

### Count I –Recoupment Under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e ("FDCPA")

58. Mr. Barron incorporates all paragraphs above by reference as if set forth herein.

59. Mr. Barron is a natural person allegedly obligated to pay the amount due under the Mortgage.

60. Mr. Barron is a "consumer" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.S. S 1692a(3).

61. Mr. Barron used the mortgage loan proceeds to make repairs to his home.

62. Mr. Barron obtained the Mortgage Loan primarily for personal, household purposes.

63. The Mortgage constitutes a consumer debt within the meaning of the Fair Debt Collection Practices Act,15 U.S.C. § 1692a(6).

64. Wallace's principal purpose is the collection of debts, and Wallace regularly collects debts owed or due and asserted to be owed or due to another.

65. In this case, Wallace is attempting to collect on the Mortgage based on a Mortgage that it alleges that it owns that it received from Trinity.

66. At the time Wallace acquired the servicing of the Mortgage, Wallace considered the Mortgage to be in default.

67. Wallace is a "debt collector" as defined by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6).

68. On January 8, 2024, Wallace filed the Transfer of Claim in Mr. Barron's bankruptcy.

69. In the Transfer, Wallace alleged its entitlement to the $21,031.62 claimed by Claim No. 3.

70. Wallace claims that $10,550.55 is due for the principal balance, $7,801.07 is due in interest and $2,680.00 is due in fees and costs.

71.  After June 2011, Mr. Barron never received a mortgage statement from Wallace or any of its predecessors.

72. By filing this Transfer of Claim, Wallace is attempting to collect a debt that has been paid and is no longer due to it or to anyone.

73. Mr. Barron received this Transfer of Claim through his counsel.

74. In filing this Transfer of Claim, Wallace intends for Mr. Barron to believe that the amounts set forth in Claim No. 3 are actually due from Mr. Barron.

75. Wallace is not lawfully entitled to collect any principal, interest, fees or costs.

76. Wallace's allegation that it is entitled to payment under Claim No. 3 is false and deceptive.

77. Wallace is not lawfully entitled to charge interest or demand payment for interest for the period in which it or any prior loan servicer failed to send a periodic statement. *See* 12 C.F.R. § 1026.41.

78. Wallace's allegation that it is entitled to payment for interest in Claim No. 3 is false and deceptive.

79. Wallace, by filing the Transfer of Claim, violated the FDCPA, 15 U.S.C. § 1692e-f in ways including, but not limited to, the following:

   a. using false, deceptive or misleading representations and means in connection with the collection of consumer debt as set forth above, in violation of 15 U.S.C. § 1692e;

b.  misrepresenting the amount claimed due under the Loan, in violation of 15 U.S.C. § 1692e(2);

c.  using false and deceptive means in an attempt to collect a consumer debt alleged due, in violation of 15 U.S.C. § 1692e(10); and

d.   demanding fees or charges not expressly authorized by the agreement creating the debt or permitted by law, 15 U.S.C. § 1692f(1).

80. As a result of Wallace's violations of the FDCPA alleged *supra*, Mr. Barron's equity in his home has been reduced by the amount of the improper charges, and he faces the loss of his home through foreclosure.

81. In addition, Wallace's conduct in violation of the FDCPA has caused Mr. Barron to suffer aggravation, frustration, shock, a feeling of numbness, and emotional distress.

82. As a result of Wallace's violations of the FDCPA, Wallace is liable to Mr. Barron for actual damages, statutory damages, attorneys' fees and costs, and any other relief the Court deems proper.

WHEREFORE, Plaintiff requests that judgment in recoupment be entered in his favor and against Wallace, and that the Court enter an order awarding him:

a.  actual damages;

b.  statutory damages in the amount of $1,000.00;

c.  damages by way of recoupment reducing the amount owed under Claim No.;

d.  reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a); and

e.  any other relief the Court deems just and proper.

**Count II – Recoupment Under the Truth in Lending Act, 15 U.S.C. § 1638(f)**

83. Mr. Barron incorporates all paragraphs above by reference as if set forth herein.

84. The Truth in Lending Act ("TILA") requires mortgage servicers to provide borrowers with a periodic statement for each billing cycle. 15 U.S.C. § 1638(f);12 C.F.R. § 1026.41.

85. Mr. Barron did not receive any monthly statements for the Mortgage loan after June 2011; therefore, Wallace is not permitted to charge him interest from that period of time.

86. Wallace's attempts to collect $7,801.07 in interest for the period during which Mr. Barron received no periodic mortgage statements violates TILA.

87. As a result of Wallace's TILA violations, Wallace is liable to Mr. Barron for actual damages, statutory damages, attorneys' fees and costs, and any other relief the Court deems proper.

WHEREFORE, Plaintiff requests that judgment in recoupment be entered in his favor and against Wallace, and that the Court enter an Order award him:

a. actual damages;

b. statutory damages in the amount of $2,000.00;

c. damages by way of recoupment reducing the amount owed under Claim No. 3;

d. reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1638(f); and

e. any other relief the Court deems just and proper.

**Count III – Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. § 201-3**

88. Mr. Barron incorporates all paragraphs above by reference as if set forth herein.

89. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. §§ 201-3, prohibits any "fraudulent or deceptive conduct which creates a likelihood of

confusion or of misunderstanding" in the conduct of trade or commerce. 73 P.S. §§ 201-3, 202-2(4)(xxi).

90. Residential mortgage servicing is a form of "trade" or "commerce" covered by the CPL.

91. Wallace engaged in deceptive conduct that created the likelihood of confusion or misunderstanding regarding the status of Mr. Barron's mortgage account, including by but not limited to the following:

a. Falsely representing in Claim No. 3 that the principal was due on the PNC Mortgage even though Mr. Barron satisfied the Mortgage;

b. Falsely representing in Claim No. 3 that interest was due on the PNC Mortgage even though no statements were sent to Mr. Barron after June 2011; and

c. Falsely representing in Claim No. 3 the amount of interest due on the PNC Mortgage even though Wallace is not licensed under the Pennsylvania Secondary Mortgage Loan Act.

92. Mr. Barron reasonably relied on Wallace's misrepresentations about the amount due under the PNC Mortgage in missing work to meet with counsel and to prepare to defend against the allegations contained within Claim No. 3.

93. Mr. Barron expended time and resources defending himself from Wallace's Claim No. 3, including paying for transportation to attorney's office and other miscellaneous expenses related to the action.

94. Mr. Barron has also suffered an ascertainable loss of property within the meaning of 73 P.S. § 201-9.2(a), in that his mortgage debt has increased by over $21,000, thereby reducing his equity in the Property.

95. For Wallace's violations of the CPL, Mr. Barron is entitled to a trebling of the above-stated damages, plus attorneys' fees and costs, as provided by 73 P.S. § 201-9.2(a), and any other relief the Court deems proper.

WHEREFORE, Plaintiff requests that judgment in recoupment be entered in his favor and against Wallace on Count III, and that the Court enter an order awarding him:

    a.  treble damages;

    b.  reasonable attorneys' fees and costs pursuant to 73 P.S. § 201-9.2(a); and

    c.  any other relief the Court deems just and proper.

### Count IV – Violations of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.4

96. Mr. Barron incorporates all paragraphs above by reference as if set forth herein.

97. Wallace engaged in unfair or deceptive debt collection activity and practices in violation of the FCEUA, 73 P.S. § 2270.4, et seq., including the above-identified violations of the FDCPA in Count I. 73 P.S. § 2270.4(a) ("It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act.").

98. Wallace engaged in unfair or deceptive debt collection activity and practices in violation of the FCEUA, 73 P.S. § 2270.4, including:

    a.  Using false, deceptive, and misleading representations or means in connection with the collection of a debt. 73 P.S. § 2270.4(b)(5); and

    b.  Demanding fees or charges not expressly authorized by the agreement creating the debt or permitted by law. 73 P.S. § 2270.4(b)(6).

99. A violation of the FCEUA is a *per se* violation of the CPL.

100. As a result of Wallace's conduct, Mr. Barron was damaged and suffered an ascertainable loss of money or property in the amount he paid for transportation to his attorney's office and other miscellaneous expenses related to the Foreclosure action, and because his equity in the Property has been reduced by the amount of the unjustified charges added to the balance of the PNC mortgage.

101. Under the FCEUA, as enforced through the CPL, Mr. Barron is entitled to treble damages, reasonable attorneys' fees and costs, and any other relief the Court deems proper.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Wallace on Count IV, and that the Court enter an Order awarding him:

    a.   treble damages;

    b.   reasonable attorneys' fees and costs pursuant to 73 P.S. § 201-9.2(a); and

    c.   any other relief the Court deems just and proper.

**Count V – Violations of the Pennsylvania Loan Interest and Protection Act, 41 P.S. § 502**

102. Mr. Barron incorporates all paragraphs above by reference as if set forth herein.

103. The PNC Mortgage was originated pursuant to Pennsylvania's Secondary Mortgage Loan Act ("SMLA"), 7 P.S. § 6601- 6626.[1]

---

[1] On July 8, 2008, effective 120 days thereafter, the Secondary Mortgage Loan Act was amended and re-issued as part of the Mortgage Loan Industry Licensing and Consumer Protection Act. In the process, the statute was re-codified at 7 Pa. C.S. §§ 6101 *et seq.* All references to the Secondary Mortgage Loan Act in the instant Complaint refer to the Act in effect in 2002, which remains applicable to Mr. Barron's Mortgage. *See* 7 Pa. C.S. § 6153 (nothing in the MLILCPA "shall be construed to impair or affect first or secondary mortgage loans executed prior to the effective date_ of the statute).

104. With certain exceptions not applicable here, no person is permitted to "engage in the business of making secondary mortgage loans in Pennsylvania without first obtaining a license from the Pennsylvania Department of Banking. 7 P.S. § 6603.

105. For purposes of the SMLA, an entity is deemed to be "engaged in the secondary mortgage loan business" if it becomes the subsequent holder of two or more promissory notes or mortgages received in connection with a secondary mortgage loan and that entity also issues or services such loans. 7 P.S. § 6603(a)(5)(ii).

106. On information and belief, Wallace has become the subsequent holder of two or more promissory notes or mortgages received in connection with a secondary mortgage loan and that Wallace services secondary mortgage loans.

107. The SMLA permits licensees to charge interest rates on secondary mortgage loans in excess of what would otherwise be permitted under Pennsylvania law. Specifically, the SMLA permits licensees to "charge, contract for and receive & interest at a percentage rate not exceeding 1.85% per month. 7 P.S. § 6609.

108. Absent the authority of the SMLA, Pennsylvania law limits the interest that may be charged on any "residential mortgage."  41 P.S. § 301.

109. The maximum lawful interest rate for residential mortgages in Pennsylvania is tied to the Monthly Index of Long Term United States Government Bond Yields. *Id.*

110. For the month of March 2007, the month during which Mr. Barron executed the Mortgage, the maximum allowable interest rate for residential mortgages was 7.25% per annum. 37 Pa.B. 960.

111. On information and belief, at no point has Wallace ever held a license under the SMLA

or otherwise been permitted under Pennsylvania law to engage in the business of making secondary mortgage loans.

112. Because Wallace was not licensed under the SMLA, it acquired the loan in violation of the statute.  7 P.S. § 6611 (providing that a secondary mortgage licensee may not "assign, sell or transfer a secondary mortgage loan to any person except a licensee").

113. Because Wallace was not licensed under the SMLA, the maximum interest rate that it was permitted to charge Mr. Barron was 7.25% simple interest *per annum*, the interest rate applicable to residential mortgages originated in Pennsylvania during the month of March 2007. 41 P.S. § 301; 37 Pa.B. 960.

114. Notwithstanding that Wallace never been licensed under the SMLA, Wallace is unlawfully charging Mr. Barron an annual interest rate of 8.993%.

115. Interest charged in excess of the amount allowed by law need not be paid. 41 P.S. § 501.

116. Wallace is also liable for treble damages in an amount of no less than $23,403.00. 41 P.S. § 502.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Wallace on Count V, and that the Court enter an Order awarding him:

a. treble damages;

b. reasonable attorneys' fees and costs pursuant to 41 P.S. § 503; and

c. any other relief the Court deems just and proper.

DATED:  March 27, 2026

/s/ Gabriela Rodriguez
GABRIELA RODRIGUEZ
PHILADELPHIA LEGAL ASSISTANCE
Attorney for Mr. Barron
718 Arch Street, Suite 300N
Philadelphia PA 19106
(215)981-3839
(215)981-3860(fax)